848 So.2d 80 (2003)
STATE of Louisiana
v.
Eric H. TRICHE.
No. 03-KA-149.
Court of Appeal of Louisiana, Fifth Circuit.
May 28, 2003.
*82 Paul D. Connick, Jr., District Attorney, Andrea F. Long, Terry M. Boudreaux, Donald A. Rowan, Jr., Assistant District Attorneys, Gretna, LA, for State.
Prentice L. White, Baton Rouge, LA, for Defendant-Appellant.
Panel composed of Judges THOMAS F. DALEY, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
At issue in this appeal is whether the trial court properly denied defendant's motion to suppress. For the following reasons, we affirm but remand this case for resentencing.

STATEMENT OF THE CASE
On May 4, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, Eric Triche, with possession with intent to distribute marijuana. La.R.S. 40:966 A. Defendant was arraigned on June 28, 2001, and pled not guilty.
Defendant filed a Motion to Suppress the Evidence which was denied. The defendant objected to the ruling, and noticed his intent to apply for supervisory writs. However, there is no record that defendant *83 filed a writ application in this Court. The trial was completed on October 25, 2001, and the jury returned a verdict of guilty as charged.
On November 9, 2001, the trial court sentenced defendant to 15 years at hard labor. The same day, the State filed a habitual offender bill of information, alleging that defendant was a second felony offender. A hearing was held on February 1, 2002, and the court found defendant to be a second felony offender. On March 1, 2002, the trial court imposed an enhanced sentence of 20 years at hard labor, without benefit of parole, probation, or suspension of sentence.
Defendant failed to make a timely motion for appeal. On November 18, 2002, he filed a timely Uniform Application for Post-conviction Relief, requesting reinstatement of his appeal rights. On November 22, 2002, the trial court granted defendant an out-of-time appeal.

FACTS
On September 30, 2000, Jefferson Parish narcotics agents John Pacaccio and Dennis Lynch conducted surveillance outside of the Red Lobster Restaurant at Lakeside Shopping Center, on Causeway Boulevard in Metairie. Pacaccio had received information from a "concerned citizen" that a black male employee of the restaurant (who went by the nickname "Red") was selling marijuana from his car. The car was described as a tan Chevrolet Lumina, which was alleged to be parked at the restaurant. The caller supplied officers with the car's license plate number. Pacaccio ran the number on the police computer, and found that the Lumina was registered to defendant, Eric Triche. Lynch and Pacaccio arrived at the restaurant's parking lot between 8 and 9 p.m. They saw the tan Lumina parked there. The officers were in separate cars and parked in different positions, so that they could see the Lumina from each vantage point. The officers first observed defendant exit the restaurant, dressed in a Red Lobster employee uniform. He walked to the Lumina, sat in the driver's seat, and stayed there for several minutes. He appeared to search for something in the back seat area of the car. He then left the car and returned to the restaurant.
Thirty to forty five minutes later, he exited the restaurant with one of his co-workers. The two men got into defendant's car. Defendant appeared to show his companion the car's stereo system. He turned on the radio, and played the music loudly. Pacaccio testified that defendant appeared to be looking around for something in the passenger area. The two men got out of the car and went back in the restaurant. At about 11:00 p.m., a man driving a blue Saturn automobile entered the parking lot, and parked alongside defendant's car. This man went into the restaurant, then came back outside with defendant. Defendant and the unknown subject went to defendant's car and opened the trunk. Defendant removed a brown bag from inside, and tried to give it to the driver of the Saturn. Defendant then closed the trunk. The second man took the bag to the Saturn, opened the trunk, and put the bag inside. Pacaccio testified that, based on the anonymous tip and his experience in narcotics work, he believed a drug transaction had taken place.
Pacaccio and Lynch moved from their position then parked behind the Lumina and the Saturn, and conducted what Pacaccio characterized as an investigatory stop. The officers' objective was to determine what was in the brown bag. Lynch detained defendant. Pacaccio asked the Saturn's driver for permission to search his car. The subject gave his verbal consent for a search. Upon opening the trunk *84 of the Saturn, Pacaccio discovered a brown Dillard's department store shopping bag. The bag contained a white rag and a bag of green vegetable material. Pacaccio placed the driver of the Saturn under arrest.
Pacaccio asked defendant for permission to search the Lumina, and defendant allegedly consented. The officers opened the trunk of defendant's car, and found a camera case. The case contained green vegetable material. Pacaccio searched inside of the car, and found a compact disk case in the rear passenger area. The case contained loose green vegetable matter, along with several small plastic bags with the residue of green vegetable matter. Pacaccio searched the passenger area and located some smoked or burned hand-rolled cigarettes. The officers placed defendant under arrest. Following the arrest, the officers found $122 on defendant's person. Daniel Waguespack, a forensic scientist with the Jefferson Parish Crime Lab, testified that he analyzed the green vegetable matter seized in the instant case. All of it tested positive for marijuana.

DISCUSSION
Defendant argues the trial court erred in denying the motion to suppress because the evidence seized from the search was obtained after the arresting officers illegally detained him and that the search was conducted without valid consent from him. Defendant contends that the trial court erred in denying his motion to suppress the evidence. He maintains that the officers did not have reasonable suspicion to support the initial stop, and that the officers did not obtain valid consent to search either his own car, or that of the second subject. In this case, police officers obtained the information from an anonymous phone call.
The Fourth Amendment to the United States Constitution and Article I, Section V of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Mercante, 02 712, p. 4 (La.App. 5 Cir. 12/30/02), 836 So.2d 596, 599. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal behavior is recognized by state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, supra; State v. Williams, 98-1006, p. 9 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 70 writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118. The Terry standard is codified in La.-C.Cr.P. art. 215.1, which allows a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense" and to demand that the person identify himself and explain his actions.
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. State v. Duckett, 99-314, p. 5 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230. Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized as a result is suppressible.
Whether an informant's tip establishes probable cause to arrest, or reasonable suspicion to stop must be considered under the totality of the circumstances. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The sufficiency of an anonymous tip under Terry is determined by the reliability of its assertion of illegality, and not just *85 its tendency to identify a determinate person. Florida v. J. L., 529 U.S. 266, 272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000); State v. Johnson, 01-2436, p. 3 (La.App. 5 Cir. 1/25/02), 806 So.2d 647, 648. The anonymous caller's ability to predict the suspect's future behavior goes toward reliability, as it demonstrates inside information and a special familiarity with the suspect's affairs. Alabama v. White, 496 U.S. 325, 332, 110 S.Ct. 2412, 2417, 110 L.Ed.2d 301 (1990); State v. Robertson, 97-2960, pp. 7-8 (La.10/20/98), 721 So.2d 1268, 1270.
Corroboration of details of an informant's tip by an independent police investigation is valuable when applying the totality of the circumstances analysis. State v. Raheem, 464 So.2d 293, 296 (La. 1985). A non-predictive anonymous tip, paired with either police corroboration or independent police observation of unusual suspicious conduct, can provide police with the reasonable suspicion needed to temporarily detain the suspect. State v. Robertson, supra; State v. Liles, 01-573, p. 10 (La.App. 5 Cir. 11/27/01), 803 So.2d 125, 129-130.
In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court may consider pertinent evidence adduced at both the suppression hearing and at trial. State v. Nelson, 02-65, p. 4 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 799. The hearing on the motion to suppress in the instant case was held on the day of trial. Agents John Pacaccio and Dennis Lynch testified for the State.
The record in this case reveals that a "concerned citizen" telephoned Agent Pacaccio to inform him that Eric Triche (a/ k/a "Red") was selling narcotics from his car. The caller said defendant did this at about 10:30 every night, and that it was an ongoing activity. The caller further informed Pacaccio that defendant routinely met with buyers in the parking lot outside of Red Lobster, and distributed marijuana from the trunk of his car. The informant described defendant's car as a tan Chevrolet Lumina, and gave the car's license plate number.
The officers confirmed info received from the caller when they went to the Red Lobster parking lot between 8:00 and 9:00 p.m. on September 30, 2000. They located the car and found the make, model, and license plate number of the car were consistent with the information provided by the caller. A computer check confirmed that the car was registered to defendant. The officers began surveillance in the parking lot, several yards away from defendant's car. They initially saw defendant exit the restaurant and go to his car at 10:00 p.m. Defendant later returned to his car with another individual. The officers did not see defendant engage in suspicious activity up to that point in time. On a third trip to his car, defendant met with a man (known only as Mr. Zara) who arrived in a Saturn automobile to conduct what the officers believed was a drug transaction. Defendant removed a bag from the trunk of his car and passed it to Zara who then placed it in his trunk. The time frame, along with the activities observed by the officers, confirmed the information given by the caller.
The anonymous caller not only gave detailed information about defendant, but he or she gave predictive information that was later corroborated. Moreover, the officers testified that the caller's information, along with their experience in narcotics work, led them to suspect defendant was engaging in a drug transaction. Moreover, Pacaccio testified that the Dillard's shopping bag was typical of the type of bag used to conceal marijuana, and that the covert hand-off of the bag, and Zara's *86 placement of the bag in his car's trunk, were consistent with a narcotics transaction. We agree with that assessment of the facts.
Defendant points to the officers' testimony that they did not see any money change hands during the transaction. He argues that without an exchange of money, the handing over of a bag from one person to another would not have given the officers a basis for reasonable suspicion that a crime had been committed. At trial, however, Agent Lynch testified that a drug transaction can involve the exchange of drugs for money or property. Alternatively, the distributor might receive nothing at the time of the transaction, and instead collect his payment at a later date. Based on the foregoing, we believe the officers had reasonable suspicion to believe a crime had been, or was about to be committed and were justified in making an investigatory stop.
Defendant next asserts that even if the initial stop was justified the officers were not authorized to search his or Zara's car, as they did not receive valid consent. While defendant has standing to challenge the seizure of evidence from his car, he does not have standing to challenge the seizure of marijuana from his companion's car.
A search conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Moreno, 619 So.2d 62, 66 (1993). Consent to search is an exception when it is freely and voluntarily given by a person who possesses authority or other sufficient relationship to the premises or other effects sought to be inspected. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Edwards, 97-1797, p. 11 (La.7/2/99), 750 So.2d 893, 901, cert. denied, 528 U.S. 1026, 120 S.Ct. 542, 145 L.Ed.2d 421 (1999); State v. Gomez, 01-717, p. 6 (La.App. 5 Cir. 11/27/01), 802 So.2d 914, 918. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. State v. Gibson, 97-1203, p. 8 (La.App. 5 Cir. 3/25/98), 708 So.2d 1276, 1280. Voluntariness is a question of fact to be determined by the trial judge under the totality of the circumstances. State v. Edwards, supra; State v. Gibson, 97-1203 at p. 9, 708 So.2d at 1281. The decision to deny a motion to suppress is afforded great weight, and it will not be set aside unless the preponderance of the evidence clearly favors suppression. Gibson, supra.
The record reflects that Agent Pacaccio testified that, when he and Agent Lynch approached the suspects, Zara spontaneously said, "Hold up, I'm not going to resist. The weed's in the trunk." Pacaccio and Lynch then performed a search of Zara's car, and found the bag of marijuana they saw defendant give Zara. Agent Lynch next did a pat-down search of defendant for weapons. Agent Pacaccio explained the nature of the investigation to defendant. Pacaccio testified that he then asked defendant for permission to search his car, and defendant verbally consented. Defendant points out that there is no written evidence of his consent. However, oral consent to a search is sufficient; written consent is not required. State v. Ossey, 446 So.2d 280, 287, n. 6 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984).
It appears that, even if defendant did not give valid consent to search, the officers had probable cause to search defendant's vehicle, based on the transaction *87 they witnessed, and the marijuana recovered from Zara's car. Accordingly, this assignment of error is without merit.

ERRORS PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA C.Cr.P. art. 920. State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The transcript of the habitual offender sentencing does not show that the trial court vacated defendant's original sentence before imposing the enhanced sentence. The habitual offender commitment, however, reflects that the original sentence was vacated. Generally, where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). However, in State v. Mayer, 99-3124 (La.3/31/00), 760 So.2d 309 (per curiam), the Louisiana Supreme Court found that an enhanced sentence in such circumstances was valid:
To the extent that the ... commitment/minute entry reflects that the trial judge vacated the defendant's original sentence and thereby eliminated any possible confusion as to the terms of the defendant's confinement, the failure of the transcript to show that the court did so before sentencing the defendant as a multiple offender did not affect the substantial rights of the defendant.
This Court has followed Mayer. See, State v. Simmons, 02 960 (La.App. 5 Cir. 1/28/03), 839 So.2d 239; State v. Davis, 01-123, pp. 6-7 (La.App. 5 Cir. 7/30/01), 792 So.2d 126, 130.
La. R.S. 15:529.1(G) denies a habitual offender the benefit of probation or suspension of sentence, but does not deny him parole eligibility. The habitual offender hearing transcript shows that the trial court denied defendant the benefit of parole. We are remanding for correction of this error.
The trial judge did not explicitly rule that defendant was a second felony offender. However, where the habitual offender bill alleges only one prior felony, the trial judge's finding that the defendant is a habitual offender can only relate to a second offense. See, State v. Esteen, 01-879, p. 28 (La.App. 5 Cir. 5/15/02), 821 So.2d 60, 78, n. 22, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983. Accordingly, we vacate defendant's sentence and remand for resentencing.

CONCLUSION
Based on the foregoing, we affirm defendant's conviction but vacate the sentence and remand this case for resentencing.
AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.