877 So.2d 1073 (2004)
STATE of Louisiana
v.
Melvin L. BURNS, Jr.
No. 04-KA-175.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 2004.
*1074 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Andrea F. Long, R. Christopher Cox, III, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY, and MARION F. EDWARDS.
THOMAS F. DALEY, Judge.
Defendant, Melvin L. Burns, Jr., appeals his conviction of possession of cocaine in violation of LSA-R.S. 40:967(C). He pleaded no contest under State v. Crosby,[1] reserving the right to appeal the denial of his Motion to Suppress Evidence.
Burns was charged in a Bill of Information on October 15, 2002 with possession of cocaine in violation of LSA-R.S. 40:967(C).[2] He filed several pre-trial motions including a Motion to Suppress the Evidence. After a hearing on April 15, 2003, the trial court denied the Motion to Suppress the Evidence. Thereafter, on the same day, Burns proceeded to trial before a six-person jury. The minute entry reflects that he withdrew his not guilty plea and entered a plea of no contest before the jury could return with a verdict. The transcript shows the jury returned a verdict of guilty.[3]
At some point during the trial proceedings, Burns entered a plea of no contest reserving his right under Crosby to appeal denial of his Motion to Suppress the Evidence. The trial court conducted a plea colloquy with Burns, advising him of his rights and subsequently accepted Burns's plea of no contest. In accordance with a plea agreement, defendant was sentenced to two years at hard labor, which was suspended in favor of two years of active probation. Burns was also ordered to pay a fine of $450.00.
Burns appeals the denial of his Motion to Suppress the Evidence.

FACTS[4]
At the Motion to Suppress the Evidence hearing, Deputy Ronnie Voorhies testified that on October 1, 2002, he and his partner, Deputy Gary Mariano, were on patrol in an unmarked police unit in the 6000 block of Field Street. Deputy Voorhies, who is with the Street Crimes Unit of the *1075 Jefferson Parish Sheriff's Office, stated that the area is a high drug trafficking area.[5]
At approximately 9:30 p.m., Deputy Voorhies observed Burns standing in the middle of the street. Deputy Voorhies explained that as he and Deputy Mariano approached, Burns recognized the unmarked vehicle as "police presence" and turned and started walking towards a nearby residence. Deputy Voorhies stated Deputy Mariano stopped the car so they could investigate. He testified that when he and Deputy Mariano exited the vehicle, Burns ran toward the residence at 6010 Field Street. Deputy Voorhies stated he and Deputy Mariano were wearing utilities, or their street crimes uniforms.
Deputy Voorhies ran after Burns and caught him as he was standing in the doorway of the residence. Deputy Voorhies testified that right before he grabbed Burns, he observed defendant reach his right hand into the right front pocket of his pants, retrieve an object and discard it on the ground. Deputy Voorhies handcuffed Burns and then retrieved the object, which was a clear plastic wrap containing eight off-white rock-like objects, from the ground right inside the doorway of the residence.[6]

ASSIGNMENT OF ERROR NUMBER ONE
Burns argues the trial court erred in denying his Motion to Suppress the Evidence. He contends the initial stop of Burns was an unjustified intrusion on his constitutional right to be left alone. Burns asserts the police conducted an investigatory stop based solely on their "hunch" that he was up to no good. He submits that his flight from the police and subsequent abandonment of the cocaine was triggered by unlawful interference. The State responds that Burns's presence in a high crime area coupled with his flight from the officers was sufficient to justify an investigatory stop.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.[7]
In a hearing on a Motion to Suppress, the State bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's decision to deny a Motion to Suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[8]
It is well-established that a police officer may conduct a brief investigatory stop when the officer has a reasonable articulable suspicion of criminal activity.[9] "Reasonable suspicion" is something less than probable cause and is determined under *1076 the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference.[10]
The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person.[11]
An officer's mere unparticularized suspicion or "hunch" of criminal activity is insufficient to establish reasonable grounds to stop a person.[12] Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crimes.[13] While an individual's mere presence in a high-crime area, standing alone, is insufficient to justify an investigatory stop, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop.[14]
In Illinois v. Wardlow,[15] the United States Supreme Court held that an individual's unprovoked flight through a high-crime area in response to the approach of the police gives rise to reasonable suspicion for an investigatory stop. In Illinois v. Wardlow, police officers were in a four-car caravan converging on an area known for heavy narcotics trafficking in order to investigate drug transactions. The two officers in the last car observed defendant standing next to a building holding an opaque bag. Defendant looked in the direction of the officers and then fled. The officers pursued defendant and eventually stopped him. They conducted a protective patdown search and discovered defendant was carrying a gun.
The United States Supreme Court found that it was defendant's unprovoked flight upon noticing the police that aroused the officers' suspicion and not defendant's mere presence in an area known for heavy narcotics trafficking. Citing its previous opinion in United States v. Sokolow, supra, the Supreme Court again stated, "Headlong flight  wherever it occurs  is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."[16] Noting that an individual has a right to ignore the police and go about his business, the United States Supreme Court stated that unprovoked flight is not a mere refusal to cooperate. It further stated that "[f]light, by its very nature, is not `going about one's business'; in fact, it is just the opposite."[17]
In State v. Johnson,[18] the Louisiana Supreme Court found that police officers had reasonable suspicion to conduct an investigatory stop when defendant and his companion *1077 "significantly picked up their pace" and headed in a direction away from the officers. In Johnson, the police officers were patrolling an area known for high narcotics activity. The officers approached defendant and his companion in a marked unit. The two men picked up their pace and headed toward a crossover that led to another courtyard. The men were "nearly running" and repeatedly looked over their shoulders at the officers. The officers stopped the men before they reached the crossover and ordered them to place their hands on the hood of the patrol car. Prior to the pat down search, defendant removed his left hand from the hood of the patrol unit and dropped a glass crack cocaine pipe to the ground.
The Louisiana Supreme Court noted that the defendant did not enter into a "headlong flight," but rather had quickened his pace. In upholding the validity of the investigatory stop, the Louisiana Supreme Court concluded that in the context of the circumstances known to the officer such as "the lateness of the hour, the high crime character of the area, and the nervous demeanor of the two men reflected in their repeated glances over their shoulders, [the defendant's] evasive conduct provided the minimal objective justification for an investigatory stop."[19]
In the present case, Deputy Voorhies testified that he was on patrol at night in a high crime area when he observed defendant standing in the middle of the street. He stated that when defendant noticed the unmarked unit as "police presence," Burns started to walk away toward the residence. Deputy Voorhies testified that Burns made eye contact before walking away. During trial, Deputy Voorhies stated that as Burns was walking away, he was looking back towards the officers.[20] Deputy Voorhies explained that these actions led him to believe Burns was attempting to evade the officers. When Deputy Voorhies exited the vehicle, Burns began to run toward the residence.
In denying the Motion to Suppress the Evidence, the trial court stated:
I heard testimony to the effect that the defendant was standing in the street, that he did take steps that appeared to the officers at the time to be in their view obviously evasive of police, and I take significant notice of the fact that this is a high drug trafficking or high drug crime area, a fact which is not in dispute. When I consider the totality of circumstances although Ms. Taylor you are quite right citizens have a right to avoid contact with police in they so chose [sic] that does not mean that circumstances may not exist under which the police may have reached the rather low level of reasonable suspicion to pursue an individual who attempts  who raises their suspicion by attempting to get away from them under circumstances such as these.
Based on the above-discussed jurisprudence, Burns's unprovoked flight from the officers in a high crime area provided the requisite reasonable suspicion to justify the investigatory stop. Burns discarded the contraband before Deputy Voorhies made physical contact with him. Thus, there was no unlawful intrusion into Burns's right to be free from governmental interference and any property abandoned by Burns was lawfully seized.[21] *1078 The trial court did not err in denying the Motion to Suppress the Evidence.
Burns notes in his appellant brief that Deputy Voorhies' testimony regarding the high crime nature of the area was elicited by the trial court over defense counsel's objection. He suggests the trial judge questioned Deputy Voorhies in such a manner that the trial judge abandoned his role as a neutral magistrate and improperly acted as an advocate for the State's position. Burns did not assign the trial judge's conduct of questioning the witness as an error. Further, Burns neither argued his position nor cited any legal authority for his suggestion that the trial judge's questioning was improper. Therefore, the trial judge's questioning of the witness is not an issue for review. See, Uniform Rules, Courts of Appeal, Rule 2-12.4.
Of note, a court can take judicial notice of the high crime nature of an area.[22] The 6000 block of Field Street has been previously recognized by this Court as a high crime area.[23] This Assignment of Error has no merit.

ASSIGNMENT OF ERROR NUMBER TWO
As requested by the defendant, the record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920.[24]
The commitment shows that Burns was ordered to pay $300.00 of which $150.00 was to be paid to the I Can Help Drug Program. The transcript reflects he was ordered to pay a $450.00 fine of which $150.00 was to be paid to the drug program. Where there is a discrepancy between the commitment and the transcript, the transcript prevails.[25] We order the trial court to correct the discrepancies to ensure an accurate record.
The trial court failed to properly inform Burns of the prescriptive period for filing post-conviction relief pursuant to LSA-C.Cr.P. art. 930.8. The minute entry shows Burns was advised that he had "two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief." However, the transcript shows the trial court advised Burns he had "two years from the date your sentence becomes final to request post-conviction relief." As noted above, the transcript prevails where there are discrepancies between the minute entry and transcript. This Court has held that the failure to advise a defendant that the prescriptive period runs from the time his conviction and sentence become final is incomplete.[26] Therefore, we remand the case and order the district court to properly inform Burns of the time from which prescription for post-conviction relief runs by sending written notice of such to Burns within ten days of the rendition of its opinion and to file written proof that defendant received the notice in the record. Id.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La.1976).
[2] There is no minute entry indicating defendant was arraigned. Defendant did not object to the failure to arraign him prior to proceeding to trial or prior to pleading to the bill; therefore, any irregularity in the arraignment procedure or lack thereof is waived. See, LSA-C.Cr.P. art. 555; State v. Smith, 02-1018 (La.App. 5 Cir. 3/11/03), 844 So.2d 119, 126. When there has been a failure to arraign a defendant, it is considered as if he pled not guilty. LSA-C.Cr.P. art. 555.
[3] According to Burns's appellant brief, there was not a proper verdict because the jury's verdict was not unanimous. The transcript reflects the jury was polled, but there are no polling slips contained in the record and the polling process and results were not transcribed. Of note, the written verdict sheet included in the record has a handwritten notation at the bottom stating, "verdict sheet not correct."
[4] Unless otherwise noted, the facts are taken from the evidence presented at the Motion to Suppress the Evidence hearing.
[5] This information was elicited upon the trial judge's questioning of Deputy Voorhies after argument on the Motion to Suppress the Evidence and over defense counsel's objection.
[6] At trial, before defendant pled no contest, it was established that the eight rock-like objects were cocaine. The gross weight of the eight rocks of cocaine with the bag was 1.68 grams.
[7] State v. Duckett, 99-314 (La.App. 5 Cir. 7/27/99), 740 So.2d 227, 230.
[8] State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, 74, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[9] LSA-C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 968.
[10] State v. Belton, supra at 1198; State v. Massey, supra at 968.
[11] State v. Massey, supra at 968
[12] United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d 1205, 1207.
[13] State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
[14] State v. Barney, supra at 1207.
[15] 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000).
[16] Illinois v. Wardlow, 528 U.S. at 124, 120 S.Ct. 673.
[17] Id., 528 U.S. at 125, 120 S.Ct. 673.
[18] 01-2081 (La.4/26/02), 815 So.2d 809.
[19] State v. Johnson, supra at 811.
[20] In determining whether the trial court's ruling on a defendant's Motion to Suppress the Evidence is correct, the appellate court may consider evidence adduced at both the suppression hearing and at trial. State v. Hotard, 03-435 (La.App. 5 Cir. 12/30/03), 864 So.2d 748, 756, footnote 10.
[21] See, State v. Tucker, 626 So.2d 707, 710 (La.1993).
[22] LSA-C.E. art. 201; State v. Miskel, 95-584 (La.App. 5 Cir. 1/20/96), 668 So.2d 1299, 1303.
[23] See, State v. Massey, 03-1166 (La.App. 5 Cir. 1/27/04), 866 So.2d 965, 967, 970.
[24] State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[25] State v. Lynch, 441 So.2d 732, 734 (La.1983).
[26] See, State v. George, 99-887 (La.App. 5 Cir. 1/4/00), 751 So.2d 973, 975.