986 So.2d 792 (2008)
STATE of Louisiana
v.
Troy HUNTLEY a/k/a Teddy Huntley.
No. 08-KA-125.
Court of Appeal of Louisiana, Fifth Circuit.
May 27, 2008.
*794 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Churita Hansell, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, Louisiana, for Defendant/Appellant.
Panel composed of Judges THOMAS F. DALEY, MARION F. EDWARDS, and WALTER J. ROTHSCHILD.
MARION F. EDWARDS, Judge.
In this criminal matter, defendant/appellant, Teddy Huntley a/k/a Troy Huntley ("defendant"), appeals his conviction and sentence on a charge of possession of cocaine in violation of LSA-R.S. 40:967(C). The record shows that defendant entered a plea of not guilty to the charge and filed a motion to suppress the evidence that was later denied. Defendant was subsequently tried before the bench and found guilty as charged. Defendant waived delays and was sentenced to serve ten years at hard labor. Defendant filed a timely motion for appeal, which was granted.

FACTS
Officer Todd Giacona ("Officer Giacona") of the Jefferson Parish Sheriffs Office testified that he was assigned to Project Star, a community policing program, at the time of defendant's arrest. Project Star targeted neighborhoods with the highest crime rate, including the Tallow Tree Lane area. As part of the program, Officer Giacona interacted with residents of the area to obtain information regarding criminal activity in the area. Officer Giacona testified both at the hearing on the motion to suppress and at trial.
Officer Giacona received information for a confidential informant that drug activity *795 was occurring in the Tallow Tree Lane area. The officer also received specific complaints from the owner of an apartment building on Tallow Tree Lane. The gentlemen explained that most of the apartments were vacant. He also told officers he had received numerous complaints of illegal drug activity and break-ins occurring in and around the building. The apartment owner asked Officer Giacona to patrol the area.
Several days after getting that information, Officer Giacona and his partner, Sergeant Green, went to the location to investigate the complaints. When they arrived, Officer Giacona observed a man, later identified as defendant, in front of the apartment building. The officer went over to conduct a field interview and to determine whether defendant lived there. Defendant refused to produce identification, and the officer noticed that defendant had his left hand clenched at his side with money protruding out. The officer could not see what was in defendant's right hand. Defendant became nervous, put his hands behind him and refused to show the officers his hands. Concerned for his safety and that defendant may be holding a knife or razor, Officer Giacona told defendant to open his hand. When defendant refused to comply, the officers placed defendant in handcuffs. A struggle ensued, causing defendant to fall to the ground.
When defendant continued to refuse officers' demand that he open his hand, the officers threatened defendant with a taser. In response, defendant told officer Giacona to "go f____ himself," and still refused to open his hand. At this point, Sergeant Green used the taser on defendant and he opened his hand releasing a piece of rock wrapped in a sheet of paper. The rock substance tested positive for cocaine.

LAW
In brief to this Court, defendant assigns one error. He asserts the trial judge erred in denying his motion to suppress the evidence. In support of that assertion, defendant argues that Officer Giacona did not have reasonable suspicion of criminal activity to justify an investigatory stop and seizure. Defendant argues that his actions were not consistent with illegal or suspicious activity. Therefore, defendant argues the evidence obtained as a result of this seizure was tainted and should have been suppressed. Additionally, defendant argues the officers did not have probable cause to arrest him without a warrant because the stop that resulted in the arrest was unjustified.
We first consider the issue of whether the officer had reasonable suspicion of criminal activity to justify the initial investigatory stop.
The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial.[1] Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person reasonably suspected of criminal activity.[2] The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe *796 that he has been, is, or is about to be engaged in criminal activity.[3] Reasonable suspicion for an investigatory stop is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.[4]
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, giving deference to the inferences and deductions of a trained police officer.[5] The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.[6] An individual's presence in a high-crime area alone is insufficient to justify an investigatory stop. However, his presence in a high-crime area coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of the officers, gives rise to reasonable suspicion for an investigatory stop.[7] Factors that may support reasonable suspicion for an investigatory stop include an officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidents of crime.[8] When officers do not have the right to make an investigatory stop, property abandoned or otherwise disposed of as a result thereof cannot be legally seized.[9]
The State has the burden, in a hearing on a motion to suppress evidence, of establishing the admissibility of evidence seized without a warrant.[10] The trial court's denial of a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.[11] In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate court is not limited to the evidence adduced at the suppression hearing; it may also consider the evidence presented at trial.[12]
Defendant herein was in a high-crime area, in front of a nearly abandoned building in which frequent drug activity and break-ins were occurring. Defendant had no identification and became nervous at the sight of the police officers. Considering the evidence produced at both the motion to suppress hearing and the trial on the merits, as well as the totality of the circumstances, we find there was reasonable suspicion to support an investigatory stop.
When a police officer observes conduct that leads him to reasonably conclude *797 that criminal activity may be afoot and that the persons with whom he is dealing may be armed and dangerous, he is, in the course of the investigatory stop, entitled to conduct a carefully limited search to discover weapons.[13] This limited search, or pat down, is justified under circumstances where a reasonably prudent man would be warranted in the belief that his safety, or that of others, was in danger.[14] The officer's belief is not reasonable unless the officer can point to particular facts from which he reasonably inferred that the individual was armed and dangerous.[15] The officer need not establish that it was more probable than not that the detained individual was armed and dangerous. Rather, it is sufficient that the officer establish a "`substantial possibility'" of danger.[16]
Under the facts of the case before this Court, where defendant repeatedly refused to tell or show the officers what he was holding, the officers were justified in believing defendant may have been holding a small weapon such as a razor or knife. We find the officers had legitimate concerns for their safety that justified the officers' actions.
Further, we find that the officers did not exceed the scope of the search for weapons after defendant was handcuffed. At that point, defendant still refused to show officers any identification or what was in his hand, and could have slashed either officer with a knife or razor despite the handcuffs. Once the defendant dropped the cocaine, the officer had the right to retrieve it and arrest defendant for possession of cocaine. Because the cocaine was recovered after a legal stop, its seizure was legal. Accordingly, we find the trial court did not err in its denial of defendant's motion to suppress.
Upon review for errors patent, we find that the commitment incorrectly states that defendant was informed and waived his rights to a trial, to confront witnesses against him, and his right against self-incrimination. The commitment also reflects that the "plea" was acceptable to the State, indicating that defendant entered a plea of guilty. Because this defendant was tried by the bench, we find the commitment misleading. Accordingly, we order the trial court to correct the commitment to eliminate the reference to a waiver of rights and a plea.
For the foregoing reasons, defendant's conviction and sentence are affirmed. The matter is remanded to the trial court with instructions to correct the commitment in accordance with this opinion.
AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La. 1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[3] State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1301-02.
[4] State v. Charles, 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147, 1149.
[5] State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049.
[6] State v. Mitchell, 04-136 (La.App. 5 Cir. 6/29/04), 877 So.2d 1151, 1155.
[7] State v. Burns, 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1076.
[8] Id. at 1076.
[9] State v. Young, 05-702 (La.App. 5 Cir. 2/14/06), 938 So.2d 90, 97.
[10] LSA-C.Cr.P. art. 703(D).
[11] State v. Butler, 01-907 (La.App. 5 Cir. 2/13/02), 812 So.2d 120, 124.
[12] State v. Brumfield, 96-2667 (La. 10/20/98), 737 So.2d 660, 683, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999).
[13] LSA-C.Cr.P. art. 215.1(B); Terry v. Ohio, 88 S.Ct. at 1884-85.
[14] State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, 951, writ denied, 98-2259 (La. 1/15/99), 736 So.2d 200.
[15] Sibron v. New York, 392 U.S. 40, 64, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917, 935 (1968).
[16] State v. Hunter, 375 So.2d 99, 102 (La. 1979).