EDWARD A. DUFRESNE, JR., Chief Judge.
 

 12The Jefferson Parish District Attorney filed a bill of information charging defendant, Terrell Schnyder, with possession of heroin in violation of LSA-R.S. 40:966(C) (count one) and with possession with intent to distribute cocaine in violation of LSA-R.S. 40:967(A) (count two). Defendant was arraigned and pled not guilty. Thereafter, defendant advised the trial court that he wished to represent himself. The trial court allowed defendant to represent himself and denied counsel’s request to withdraw, ordering that counsel serve as an advisor to assist defendant.
 

 On June 29, 2007, the trial court heard and denied defendant’s motion to suppress evidence and statement. Thereafter, on July 17, 2007, the matter proceeded to trial before a twelve-person jury. After considering the evidence presented, the jury found defendant guilty as charged as to both counts. On August 17, 2007, defendant was sentenced to ten years imprisonment at hard labor for count one. For count two, defendant was sentenced to thirty years imprisonment at |shard labor, with the first two years to be served without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently with each other. Defendant now appeals.
 

 FACTS
 

 On March 13, 2007 at approximately 8:30 p.m., Lieutenant Daniel Jewell of the Jefferson Parish Sheriffs Office, Narcotics Section, was conducting surveillance of a Time Saver at the intersection of Central Avenue and Jefferson Highway, an area
 
 *306
 
 notorious for narcotics activity. Lieutenant Jewell had previously made numerous narcotics arrests in the same parking lot area.
 

 Lieutenant Jewell observed a white female loitering in the parking lot and then saw her use the payphone to make a call. Approximately five minutes later, a green van pulled into the parking lot. The driver of the van was later identified as defendant. The female entered the passenger door of the van and sat down in the front seat. At this time, a white male passenger exited from a truck and walked to the driver’s door of the van. Defendant turned to the female and engaged in some activity with her that lasted maybe a minute. Defendant then turned to the white male standing outside of his window. At this point, Lieutenant Jewell observed the white male hand defendant currency, and he saw defendant hand the white male something small. The white male looked at what was placed into his hand, closed his hand, and then walked away.
 

 Lieutenant Jewell elected to follow defendant. He gauged defendant’s speed with his own speedometer and realized defendant was speeding. Defendant was driving 55 mph in a 30 mph zone. He decided to initiate a traffic stop, but in the meantime a train was passing so defendant came to a stop. Lieutenant Jewell activated his lights and siren and then exited his vehicle. Lieutenant Jewell approached the driver’s side of the vehicle and requested that defendant turn off the engine and step out of his vehicle. Defendant complied. While defendant was | ¿standing within the open driver’s door, Lieutenant Jewell asked defendant his name. Defendant did not respond. Lieutenant Jewell asked him his name and why he was speeding. Again, defendant did not answer. Defendant appeared to be “edging toward” the edge of the door, possibly trying to get around the door. Lieutenant Jewell noticed defendant’s cheeks were swollen and it looked like he might be moving something around in his mouth. Lieutenant Jewell asked defendant if he had anything illegal in his mouth.
 

 Lieutenant Jewell testified that at this point he believed he had observed a narcotics transaction and believed defendant had a large quantity of an illegal substance in his mouth. According to Lieutenant Jewell, it was common for narcotics to be concealed in the mouth to avoid detection. He questioned defendant again and received no response. Lieutenant Jewell then had to “take hold of him” to prevent him from swallowing whatever was in his mouth for his safety and to prevent the destruction of evidence. Lieutenant Jewell stated that this took about three seconds and that the whole time he was telling him to spit it out. Defendant spit out the object from his mouth. Defendant was handcuffed and patted down for weapons. Thereafter, Lieutenant Jewell retrieved what defendant had spit out from off the ground.
 

 After defendant was advised of his rights, Lieutenant Jewell asked what defendant had spit out. Defendant stated it was heroin and that he was selling crack cocaine to support his heroin addiction. Additionally, defendant received a citation for speeding and for no driver’s license.
 

 Thomas Angelica, an expert in the field of testing analysis and identification of controlled dangerous substances, tested the evidence and testified that the 16 individually wrapped pieces of off-white material tested positive for cocaine and the small piece of aluminum foil containing brown powder tested positive for heroin. Lieutenant Jewell, who was accepted as an expert in the field of use, ^packaging, distribution, and value of narcotics, testified
 
 *307
 
 that it was his opinion that these rocks of crack cocaine were intended for sale.
 

 DENIAL OF MOTION TO SUPPRESS
 

 On appeal, defendant challenges the trial court’s denial of his motion to suppress evidence claiming that the evidence was illegally retrieved. Defendant specifically contends that the observations at the Time Saver and the pretextual reason for the stop were insufficient probable cause to arrest defendant. He argues that he was under arrest at the time he was ordered out of his vehicle and because he was arrested without probable cause, the evidence should have been suppressed as fruit of the poisonous tree.
 

 Defendant further argues that the officer did not even have reasonable suspicion for the investigatory stop. Defendant argues that the officer only observed money being paid and failed to observe criminal activity. Defendant also argues that the circumstances leading to the stop were insufficient to justify the detention and the frisk. He argues the officer was not justified in choking defendant to force him to spit out what was in his mouth. For the reasons that follow, we find no merit to defendant’s arguments.
 

 The Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures.
 
 State v. Triche,
 
 03-149 (La.App. 5 Cir. 5/28/03), 848 So.2d 80, 84,
 
 writ denied,
 
 03-1979 (La.1/16/04), 864 So.2d 625. If evidence is derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from the defendant’s trial.
 
 State v. Burns,
 
 04-175 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075.
 

 In a hearing on a motion to suppress, the State bears the burden of proof in establishing the admissibility of evidence that is seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial comb’s decision to deny a motion to suppress is | (¡afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression.
 
 State v. Burns,
 
 877 So.2d at 1075.
 

 Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to perform investigatory stops which permit officers to stop and interrogate a person who is reasonably suspected of criminal activity. The Terry
 
 [1]
 
 standard, as codified in LSA-C.Cr.P. art. 215.1, authorizes police officers to stop a person in a public place whom they reasonably suspect is committing, has committed, or is about to commit an offense and demand that the person identify himself and explain his actions.
 
 State v. Becnel,
 
 04-1266 (La.App. 5 Cir. 5/31/05), 904 So.2d 838, 852.
 

 The “reasonable suspicion” needed for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual’s right to be free from governmental interference. The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court is to take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Factors that may support reasonable suspicion for an investigatory stop include an officer’s experience, his knowledge of recent criminal patterns, and his knowl
 
 *308
 
 edge of an area’s frequent incidence of crimes.
 
 State v. Burns,
 
 877 So.2d at 1075-76.
 

 At the suppression hearing, Lieutenant Jewell testified that on March 13, 2007, he was conducting surveillance of the parking lot of the Time Saver located at Jefferson Highway and Central Avenue, an area notorious for narcotics trafficking. At approximately 8:30 p.m., he observed a white female loitering in the |7parking lot and two white males sitting in a Dodge pickup truck, parked with the lights off. The officer then observed the white female walk to the payphone located near the intersection and make a call. Within five minutes, a green van driven by defendant pulled into the parking lot. The white female rushed over to the van and got into the front passenger seat. At this point, the white male passenger of the truck walked to the driver’s side window of the van. According to Officer Jewell, defendant turned to the white female and engaged in some activity with her that lasted about a minute. Defendant then turned to the white male standing outside his window. The officer saw the white male hand defendant currency, and defendant handed some small object to the white male. The white male looked at what was in his hand, nodded his head to defendant, clenched the object in his fist, and got back into the truck. The white female then exited the van and got into the truck. At this point, the officer decided to follow the van. At the suppression hearing, Lieutenant Jewell further testified that based on his training and experience, he believed what he observed was a narcotics transaction. He testified that he had been in the Narcotics Section with the Jefferson Parish Sheriffs Office for five years. He had made thousands of narcotics arrests, including arrests for drug transactions in the Central area.
 

 In
 
 State v. Fearheiley,
 
 08-0307 (La.4/18/08), 979 So.2d 487, 488-89, the Louisiana Supreme Court found reasonable suspicion existed for an investigatory stop where the police officer observed an apparent hand-to-hand transaction even though the officer “could not see what either person had in his or her hand.” The court noted the apparent exchange lasted no more than 15 to 20 seconds inside one of two cars which had arrived separately in the parking lot of a convenience store with no apparent purpose that evening other than facilitating the brief exchange between the parties. The supreme court further noted that even though the encounter had other possible innocent explanations, including the one offered by | Rthe defendant that the unidentified subject involved in the transaction paid a debt owed to the defendant, the officer was not required to “turn a blind eye to the circumstances and ignore what two years of experience in narcotics investigations ... had taught him.”
 

 In
 
 State v. Flagg,
 
 99-1004 (La.App. 5 Cir. 4/25/00), 760 So.2d 522, 527,
 
 writ denied,
 
 00-1510 (La.3/9/01), 786 So.2d 117, this court found that an experienced officer’s observation of an apparent hand-to-hand transaction that occurred at night in a high crime area, which was the subject of on-going complaints, and the defendant’s startled expression at the sight of police officers, gave rise to reasonable suspicion of criminal activity to support an investigatory stop.
 
 See also State v. Manson,
 
 01-159 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 754,
 
 cert. denied,
 
 01-2269 (La.9/20/02), 825 So.2d 1156, where this court concluded that the officers made a valid investigatory stop based on reasonable suspicion of criminal activity.
 

 Applying the jurisprudence to the facts of this case, we conclude that the officer had reasonable suspicion of criminal
 
 *309
 
 activity to justify an investigatory stop. Moreover, soon after defendant left the Time Saver, the officer had an additional basis for conducting an investigatory stop.
 

 Lieutenant Jewell testified that he followed defendant when he left. Defendant left at a high rate of speed and was going about 55 mph in a 30 mph zone. Lieutenant Jewell was able to pace him with his own car’s speedometer to determine defendant’s speed. Defendant had to stop because of a train. At this point, Lieutenant Jewell activated his lights and conducted a traffic stop.
 

 A traffic violation serves as a valid basis for an investigatory stop.
 
 State v. Leonard,
 
 06-361 (La.App. 5 Cir. 10/31/06), 945 So.2d 764, 766. In the present case, defendant was speeding. In
 
 State v. Lopez,
 
 00-0562 (La.10/30/00), 772 So.2d 90, 92, the Louisiana Supreme Court recognized that the defendant’s [¡^speeding above the posted limit gave the officer an objective probable cause basis to pull over the vehicle for a traffic violation, without regard to subjective intent. As such, Lieutenant Jewell lawfully stopped defendant after he committed a traffic violation.
 
 [2]
 

 Defendant argues that the officer used the pretext that he was speeding to justify a stop. However, both the federal and state supreme courts have held that officers may make an initial traffic stop after observing a traffic infraction, even if the stop is a pretext to investigate for controlled dangerous substances.
 
 Whren v. United States,
 
 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996);
 
 State v. Kalie,
 
 96-2650 (La.9/19/97), 699 So.2d 879. Generally, the decision to stop a vehicle is reasonable where the police have probable cause to believe that a traffic violation has occurred, and the standard is purely objective, without taking into consideration the subjective beliefs or expectations of the detaining officer.
 
 State v. Waters,
 
 00-0356 (La.3/12/01), 780 So.2d 1053;
 
 State v. Leonard,
 
 945 So.2d at 766.
 

 Although defendant argues that the order for him to exit his vehicle was unwarranted, following the lawful stop of defendant’s vehicle for the traffic violation, the officer was authorized to order that defendant exit his vehicle.
 
 See State v. Smith,
 
 07-815 (La.App. 5 Cir. 3/11/08), 982 So.2d 821, 825,
 
 writ denied,
 
 08-0927 (La.11/14/08), 996 So.2d 1088.
 
 See also Pennsylvania v. Mimms,
 
 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977).
 

 Defendant next complains that he was unjustifiably detained and that he was arrested from the moment he exited his vehicle. However, we find that defendant’s detention was proper and that he was not arrested until later.
 

 LSA-C.Cr.P. art. 215.1(D) states that in conducting a traffic stop “ ‘an officer may not detain a motorist for a period of time longer than reasonably | l0necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity.’ ”
 
 State v. Lopez,
 
 772 So.2d at 92.
 

 Defendant was initially stopped for a traffic violation. During the stop, however, it appears that defendant’s actions created reasonable suspicion of additional criminal activity. Defendant failed to respond to the officer’s questions and his cheek seemed swollen as if he was holding a large object in his mouth. Further, the officer noticed that defendant started to edge away. Lieutenant Jewell testified that he believed he was concealing narcotics in his mouth and trying to escape. Lieutenant Jewell testified that the mouth was a common place to conceal narcotics.
 
 *310
 
 Additionally, Lieutenant Jewell had previously observed defendant’s involvement in a hand-to-hand transaction. As such, the officer had reasonable suspicion to enlarge the scope of his investigation.
 
 State v. Lopez,
 
 772 So.2d at 93.
 

 Defendant further complains that the officer was unjustified in choking him to force him to spit the objects from his mouth. At the suppression hearing, Lieutenant Jewell testified that he prevented defendant from swallowing what was in his mouth. At trial, however, the officer explained in more detail how he accomplished this. He testified that he took hold of defendant to prevent him from swallowing whatever was in his mouth for his safety and to prevent the destruction of evidence. He explained that this took about three seconds and the whole time he was telling defendant to spit it out. He explained that officers prevent defendants from swallowing by applying pressure on the clavicle or jugular notch, which causes pain and makes it hard to swallow. He said that they can also push the defendants’ heads forward to make it hard to swallow.
 

 It is common knowledge that narcotic offenders often try to swallow narcotics to defeat the law enforcement process.
 
 State v. Wood,
 
 262 La. 259, 263 So.2d 28, 32 (1972). Law enforcement officials may adopt reasonable measures to retrieve contraband and prevent its destruction.
 
 State v. Charles,
 
 95-498 (La.App. 5 Cir. 12/13/95), 666 So.2d 1147, 1150. Although policemen can use reasonable force to prevent the swallowing of evidence, officers may not constitutionally beat and choke suspects in order to gain that evidence.
 
 State v. Tapp,
 
 353 So.2d 265, 268 (La.1977). Whether police action in extracting contraband from the defendant’s person is unreasonable depends upon the totality of the circumstances.
 
 State v. Charles,
 
 666 So.2d at 1150.
 

 In
 
 State v. Winfrey,
 
 359 So.2d 73 (La.1978), officers pulled the defendant over during a traffic stop. They observed the defendant and passenger pick some objects up from the middle of the seat and place them in their mouths. One officer saw the defendant place pieces of foil in his mouth. He informed the defendant he was under arrest, and a struggle ensued during which the officer placed one hand by the defendant’s mouth and the other hand on his throat to prevent him from swallowing. The Louisiana Supreme Court noted that the struggle was initiated by the defendant, only lasted one to two minutes, and there were no injuries. It concluded the officers used reasonable measures in procuring heroin from the defendant.
 

 In
 
 State v. Montgomery,
 
 95-1852 (La.App. 4 Cir. 11/16/95), 665 So.2d 101,
 
 writ denied,
 
 95-2996 (La.2/9/96), 667 So.2d 538, the officers saw the defendant put something in his mouth. Upon questioning the defendant, one of the officers saw some objects inside the defendant’s mouth. The officer then asked the defendant what he had in his mouth. After the defendant denied he had anything in his mouth the officer grabbed him by the throat and made him spit the objects out. The
 
 Montgomery
 
 court found there was no indication that the choking was anything but brief nor was there any indication from the record that the defendant required medical attention. The court found that under those circumstances, the 112trial court erred in ruling that the officers used excessive force in retrieving the evidence.
 
 See also State v. Charles,
 
 666 So.2d at 1148-51;
 
 State v. Desmond,
 
 593 So.2d 965 (La.App. 4 Cir.1992),
 
 writ denied,
 
 600 So.2d 637 (La.1992); and
 
 State v. Bolton,
 
 548 So.2d 345 (La.App. 4 Cir.1989), where the appellate courts found that the measures utilized by police to retrieve the contraband and prevent its destruction were reasonable.
 

 
 *311
 
 Having considered the jurisprudence on what does and does not constitute reasonable force
 
 [3]
 
 , we conclude that the officer in the present case used reasonable force to prevent defendant from swallowing the contraband within his mouth. We note that the officer’s efforts to prevent defendant from swallowing the narcotics and destroying evidence were short in duration and limited in extent. Further, no injuries resulted.
 

 Finally, the recovery of the cocaine and heroin that defendant subsequently spat from his mouth provided probable cause for his arrest. In
 
 State v. Washington,
 
 00-1936 (La.12/15/00), 775 So.2d 1066, the Louisiana Supreme Court found that the officers had reasonable grounds to stop the defendant who was riding a bicycle and that the officers’ recovery of a rock of cocaine in the plastic bag that the defendant had spit from his mouth provided probable cause for his arrest.
 

 Based on the foregoing discussion, we find no error in the trial court’s denial of defendant’s motion to suppress evidence. Accordingly, the arguments raised by defendant are without merit.
 

 ERROR PATENT DISCUSSION
 

 We have also reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975);
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990).
 

 113Our review reveals that there are discrepancies regarding defendant’s sentences when comparing the commitment to the transcript. According to the commitment, defendant was sentenced to ten years imprisonment at hard labor with two years of the sentence to be served without benefit of parole, probation or suspension of sentence for count one and thirty years imprisonment for count two. According to the transcript, however, defendant was sentenced to ten years imprisonment at hard labor for count one. For count two, defendant was sentenced to thirty years imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation, or suspension of sentence.
 

 The transcript prevails when there is a discrepancy between the commitment and the transcript.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983). Accordingly, we remand this matter for correction of the commitment to reflect the sentence as indicated in the transcript.
 

 For the reasons set forth herein, we affirm defendant’s convictions and sentences and remand the matter for correction of the commitment.
 

 CONVICTION AND SENTENCE AFFIRMED, REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 .
 
 Terry
 
 v.
 
 Ohio,
 
 392 U.S.
 
 1,
 
 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
 

 [2]
 

 . Defendant received a traffic citation for speeding and for no driver’s license.
 

 [3]
 

 .
 
 See Rochin v. California,
 
 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) and
 
 State v. Tapp,
 
 353 So.2d 265 (La.1977), where the courts found the level of force excessive.