8 So.3d 50 (2009)
STATE of Louisiana
v.
Mike ALVAREZ.
No. 08-KA-558.
Court of Appeal of Louisiana, Fifth Circuit.
January 13, 2009.
*52 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Margaret S. Sollars, Attorney at Law, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Panel composed of Judges MARION F. EDWARDS, GREG G. GUIDRY, and MADELINE JASMINE.
MADELINE JASMINE, Judge Pro Tempore.
The Defendant, Mike Alvarez, appeals his conviction of possession of cocaine, and his subsequent sentence of ten years at hard labor as a second felony offender. For the reasons that follow, we vacate the conviction and sentence.
In February of 2007, the Defendant was charged with possession with intent to distribute cocaine in violation of La.R.S. 40:967(A), and with possession of a firearm while in possession of cocaine in violation of La.R.S. 14:95(E). He pled not guilty, and filed various motions including a motion to suppress the evidence. The motion to suppress was denied. The Defendant was tried by a jury in February of 2008, and found guilty of the lesser charge of possession of cocaine. He was acquitted on the firearms charge.
The Defendant was sentenced to five years at hard labor, which was later enhanced to ten years after a habitual offender hearing in which he was found to be a second felony offender.
On appeal, the Defendant asserts that the trial judge erred in failing to grant his motion to suppress the evidence, and that his sentence is excessive.

FACTS
On the evening of February 1, 2007, two Jefferson Parish Sheriffs Office (JPSO) Reserve Officers, Sergeant Tim Mistretta, Captain Claude Wood, Jr., and JPSO Deputy Eric Lentz were patrolling the Woodmere Subdivision of Jefferson Parish in separate marked police cars. During their patrol, Sergeant Mistretta and Captain Wood stopped an individual for a traffic violation. Deputy Lentz arrived shortly after to offer assistance.
Sergeant Mistretta testified that he noticed defendant standing at the entry of an alleyway between two apartment complexes watching him conduct a traffic stop. Sergeant Mistretta explained that every time he made eye contact with the defendant, the defendant would "back off. Captain Wood testified that the defendant was going in and out between the two buildings and was fidgety.
Deputy Lentz testified that he noticed the defendant loitering between two apartment buildings. Deputy Lentz explained that he wanted to conduct an interview with the defendant out of concern for the other officers' safety to find out what the defendant was doing and why he was walking around in a nervous manner. Deputy Lentz testified that he asked the defendant to come over to talk to him and defendant responded "Me"; when he repeated the request, defendant responded "Huh." Deputy Lentz and Captain Wood testified that when they approached the defendant from different directions, the defendant turned and fled. The officers chased him.
*53 The officers testified that as they pursued the defendant, they saw the defendant remove a gun from his waistband and throw it into bushes in an alleyway between apartment buildings. The defendant then ran into an apartment and slammed the door shut. Officers Wood and Lentz then kicked the door down and entered the apartment. Sergeant Mistretta followed the other officers into the apartment. After a struggle, the defendant was handcuffed. The defendant was informed that he was under arrest and he was advised of his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When Deputy Lentz searched the defendant, he recovered a small bag containing a white rock substance from the defendant's pants pocket. This substance tested positive for cocaine.
The defendant told the officers that he lived at the apartment with his girlfriend. He then signed a form consenting to a search of the residence.
During the search, Deputy Lentz discovered several bags of rock-like objects inside the freezer in the kitchen. These items tested positive for cocaine. Also found were a razor with some white powdery substance on the end consistent with cocaine, and clear sandwich bags consistent with those used to wrap the drug. No drug paraphernalia was found, although the officers found magazines with 9 mm bullets, and two empty ammunition boxes.
The defendant testified. He stated that on the evening of the incident, Willie Hodges and Levita Jackson arrived at his apartment to watch a basketball game. At that time, he saw a black male dressed in black standing in the alleyway outside the apartment. Shortly after they arrived, Hodges and Jackson left to pick up something to eat. About five minutes later, the police kicked his door in and entered his apartment. He said he did not struggle, that he cooperated and got on the floor when they entered with guns drawn. After the officers handcuffed him, he complied with the officers' request to sign a form consenting to the search of his apartment. Although they searched the apartment, he denied that they searched him.
The defendant denied knowing where the crack came from, and asserted he was not aware of any drugs in his home. The defendant said Ariana Paul lived with him at the time, and claimed that the freezer in which the drugs were found belonged to Ariana's mother. He said that both her parents had a drug problem.
The defendant denied that he was chased down an alleyway, or that he discarded a gun. He testified that there were no bushes near his apartment and there was no ammunition in his house.
Ms. Jackson testified that she and Hodges saw a man standing in the alleyway when they arrived at the defendant's apartment. According to Ms. Jackson, when she and Hodges left to get something to eat, their car was blocked by two police cars. At that time, she again saw someone standing in the alleyway next to the apartment building. Ms. Jackson testified that she watched as the unknown man ran through the alley when the police went to question him. She claimed that the person chased by the police was the same individual she and Hodges had seen earlier when they drove into the driveway.
At the conclusion of trial, the defendant was found guilty of possession of cocaine. He was then adjudicated a second felony offender and received an enhanced sentence of ten years. This timely appeal followed.

ASSIGNMENTS OF ERROR
On appeal, the Defendant argues that the trial court erred in failing to suppress *54 physical evidence gathered as the result of an illegal seizure. He argues that a field stop is unjustified solely on the basis that a person is standing in front of his apartment located in a high crime area. He argues that the evidence should have been suppressed because it was recovered during an illegal investigatory stop at which the officers lacked reasonable suspicion, and he was unconstitutionally seized prior to his alleged flight.
The State responds that this Court has ruled on the suppression issue in the Defendant's pretrial writ, and the Court need not address this issue again. The State also argues that the Defendant was not stopped at the time he fled, nor was an actual stop imminent. The State argues that the Defendant's suspicious behavior in a high crime area and his unprovoked flight from the officers were sufficient to establish reasonable suspicion for an investigatory stop.

LAW AND DISCUSSION
This court denied defendant's supervisory writ application from the trial court's denial of his pre-trial motion to suppress evidence, finding the gun and the cocaine obtained in the subsequent pat-down were properly seized.[1] This denial does not bar review of the motion to suppress in the defendant's appeal of his conviction. See, State v. Fontenot, 550 So.2d 179 (La.1989) (per curiam); State v. Alo, 07-1007, p. 5 (La.App. 5 Cir. 4/15/08), 984 So.2d 877, 880-81. An appellate court may review the testimony adduced at trial, in addition to the testimony adduced at the suppression hearing, in determining the correctness of the trial court's pretrial ruling on a motion to suppress. State v. Leger, 05-0011, p. 10 (La.7/10/06), 936 So.2d 108, 122, cert. denied, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007).
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. If evidence was derived from an unreasonable search or seizure, the proper remedy is exclusion of the evidence from trial. State v. Benjamin, 97-3065 (La.12/1/98), 722 So.2d 988 (citing Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); State v. Tucker, 626 So.2d 707 (La.1993)).
The right of law enforcement officers to stop and interrogate one reasonably suspected of criminal activity is recognized by LSA-C.Cr.P. art. 215.1 as well as federal and state jurisprudence. See, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). The right to make an investigatory stop and question an individual must be based on reasonable suspicion to believe that the individual has been, is, or is about to be engaged in criminal activity. State v. Bessie, 05-284 p. 5, (La.App. 5 11/29/05), 917 So.2d 615, 619. The "reasonable suspicion" needed for an investigatory stop is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Burns, 04-175, p. 5 (La.App. 5 Cir. 6/29/04), 877 So.2d 1073, 1075-76.
The facts upon which an officer bases an investigatory stop should be evaluated *55 in light of the circumstances surrounding the incident. A reviewing court will consider the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. Burns, 04-175 at 5, 877 So.2d at 1076.
The Fourth Amendment's purpose is not to eliminate all contact between police and citizens. State v. Stanfield, 05-839, p. 6 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 715. Police officers "have the right to engage anyone in conversation, even without reasonable grounds to believe that they have committed a crime." State v. Johnson, 01-2436, p. 3 (La.1/25/02), 806 So.2d 647, 648 (per curiam) (quoting State v. Duplessis, 391 So.2d 1116, 1117-18 (La. 1980) (citations omitted). The police need not have probable cause to arrest or reasonable cause to detain an individual each time they approach a citizen. State v. Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). As long as the person remains free to disregard the encounter and walk away, there has been no intrusion upon that person's liberty or privacy which would require particularized and objective justification under the fourth amendment. Id. An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority that indicates to the person that he is not free to leave. State v. Lewis, 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820 (per curiam), cert. denied, 537 U.S. 922, 123 S.Ct. 312, 154 L.Ed.2d 211 (2002).
In State v. Tucker, 626 So.2d 707 (La. 1993), the Louisiana Supreme Court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual has been "actually stopped," i.e., seized, for purposes of La. Const, art. 1, § 5 when he submits to a police show of authority or when he is physically contacted by the police. Additionally, the Louisiana Supreme Court determined that even when an actual stop has not been effectuated, our constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain." Tucker, 626 So.2d at 712 (emphasis in original).
In the case at bar, when the defendant chose to exercise his right to disregard Deputy Lentz' request that he come over to talk to him, he was pursued by the officers. The two officers approaching the defendant from two different directions with a third officer standing nearby and chasing the defendant as he chose to leave indicates a stop of defendant was virtually imminent. Thus, the gun allegedly abandoned by the defendant as a direct result of the unconstitutional imminent stop of defendant should not have been used in the prosecution of defendant. Further, it was the alleged abandonment of the gun that gave the officers probable cause to arrest defendant and the search incident to this arrest that led to the discovery of cocaine in his pocket. Consequently, the cocaine should have been suppressed because it was recovered as a result of the unconstitutional imminent stop of defendant.
Further, the officers had no reasonable suspicion to justify an investigatory stop. The officers did not articulate any basis for them to believe that the defendant was committing, had committed, *56 or was about to commit a crime. Deputy Lentz testified that the defendant was "observing our presence in a nervous fashion." Sergeant Mistretta testified that defendant was standing there watching them conduct a traffic stop. Sergeant Mistretta explained that every time he made eye contact with the defendant, the defendant would "back off. Captain Woods testified that the defendant was going in and out between two buildings and was fidgety. Deputy Lentz testified that he wanted to question defendant because he was walking around appearing nervous and that in doing so, Deputy Lentz admitted he was acting on "pure suspicion." All of the officers testified that Deputy Lentz called to the defendant and asked him to come over so he could talk to him. Defendant responded "me" and Deputy Lentz repeated his request. Defendant then responded "huh". After that Deputy Lentz and Captain Woods approached defendant from two different angles and defendant fled. Deputy Lentz explained that when defendant fled, they chased him as a "natural reaction". Sergeant Mistretta explained that when a suspect runs, he believes that a crime may have been or might be committed so he has reasonable suspicion to pursue him. All officers testified that they did not recognize defendant as having an outstanding warrant, nor did they have any information that defendant may be involved in illegal activity.
An un-particularized hunch based on the officer's subjective beliefs or attitudes instead of a completely objective evaluation of the circumstances is insufficient to establish reasonable grounds to stop an individual. State v. Gagnon, 01-1302 p. 6 (La.App. 5 Cir. 4/10/02), 817 So.2d 167, 170. The officers did testify that the defendant was in a high crime area; however, a defendant's mere presence in a high crime area, without more, does not provide the police with reasonable suspicion based upon articulable facts to make an investigatory stop. State v. Washington, 03-1134, p. 8 (La.App. 5 2/10/04), 866 So.2d 1058, 1062.
Because the officers did not have reasonable suspicion to stop defendant, he was free to leave and refuse to talk to them. Any evidence seized from defendant was the fruit of an illegal stop, and should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 415-416, 9 L.Ed.2d 441 (1963); State v. Stanfield, 05-839 (La.App. 5 Cir. 3/14/06), 925 So.2d 710, 717.

ERROR PATENT DISCUSSION
The record was reviewed for patent errors in accordance with La.C.Cr.P. art. 920. See, State v. Oliveaux, 312 So.2d 337, 338 (La.1975); State v. Polizzi, 05-478, p. 18 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 315.
This review indicates there are discrepancies in minute entries and commitments. However, because defendant's conviction and sentence are being vacated, only the discrepancy in the minute entry for the jury trial requires correction.
The February 27, 2008, jury trial minute entry reflects that the Defendant was charged with "SCHEDULE II DIST/WITD OF A CDS (40:967.A)." The Defendant was actually charged with possession with intent to distribute cocaine. Further, the charge does not include the specific controlled dangerous substance involved. Additionally, the description of the charge for count two is incorrect. The minute entry reflects the Defendant was charged with "USE OF FIREARM/CDS (14:95.E)." The Defendant was not charged with the use of firearms, but was charged with possession of a firearm while in possession of cocaine. The minute entry *57 must be amended to correct these errors.

DECREE
For the above discussed reasons, we reverse the denial of the motion to suppress. The defendant's conviction and sentence are hereby vacated and set aside and this matter is remanded for further proceedings.
REVERSED AND REMANDED.
GUIDRY, J., dissents with reasons.
GUIDRY, J., dissents with reasons:
In my opinion, the police officers had the right to make an investigatory stop and subsequent arrest and entry into the home. The Defendant's initial suspicious actions during the officers' unrelated investigation in the dark in a high crime area, the Defendant's conduct in fleeing when the officers approached, and the abandonment of the gun, all provided the officers with reasonable suspicion to conduct a stop, and the subsequent probable cause to arrest and search the Defendant's residence.
NOTES
[1] State v. Alvarez, 07-977 (La.App. 5 Cir. 1/7/08), ___ So.2d ___ (unpublished writ disposition).