SUSAN M. CHEHARDY, Judge.
[2On appeal, defendant challenges his conviction for second degree murder. For the following reasons, we affirm his conviction and sentence.

Facts and Procedural History

In November of 2008, Ronald Graci, Darla Hodges, and Jose Martinez were residing at Ronald Graci’s home located at 1033 Focis in Metairie, Louisiana. On the evening of November 6, 2008, two men entered Graci’s house without permission.
Ms. Hodges testified that, shortly after 6:00 p.m. that night, she entered the bedroom that she shared with her boyfriend, Mr. Martinez, and witnessed a white male punching Mr. Martinez in the face and head. Mr. Martinez was on his knees during this struggle. Ms. Hodges recognized and later identified the white man that was striking her boyfriend as Mark Sonnier.
Mr. Martinez told Ms. Hodges to run so she ran out of the house and screamed for help. Moments later, as Ms. Hodges waited across the street from Graci’s house for help to arrive, she saw Sonnier and another white man nonchalantly leave Graci’s house through the front door. Sonnier walked away | ¡¡from the house, while the other man crossed the street, got into a car, and drove away.
Mr. Rayburn Clipper testified that, a little after 6:00 p.m. on November 6, 2008, he was in his first-floor apartment on Fo-cis Street working on his computer when he heard a woman screaming outside. Mr. Clipper immediately walked outside and, using his cell phone, called the police. While he was speaking with the emergency operator, Mr. Clipper observed two white men calmly walk out of Mr. Graci’s house. One wore a bandana and the other had blonde hair. The two men walked in two different directions. The blonde-haired man crossed the street to the parking area for Mr. Clipper’s apartment complex, got into a car, and drove down the street where he picked up the man with the bandana.
Officer Michael Rios of the Jefferson Parish Sheriffs Office responded to the incident and spoke with Jose Martinez, who stated that a man had attacked him and hit him in the head with his fists and a lamp. Mr. Martinez was taken by ambulance to the hospital where he later died. Dr. Susan Garcia, an expert in forensic pathology, testified that Jose Martinez died as a result of blunt force trauma to his head.
Mark Sonnier was arrested for the aggravated battery of Jose Martinez early the next morning in New Orleans. In a statement that he gave to the police that day, Sonnier identified Joseph Cammatte, defendant herein, as his accomplice. Ap *981 proximately a week later, defendant was arrested in Los Angeles, California. He waived his constitutional right against self-incrimination and gave a statement.
In his statement, defendant explained that co-defendant Mark Sonnier approached him about committing a robbery of a drug-dealer, Ronald Graci. According to Sonnier’s plan, defendant was to subdue Graci until he agreed to open the safes. Defendant admitted that he went into the residence through an |4unlocked rear door, unlocked the front door for Sonnier, found Mr. Graci and subdued him. A few minutes later, Sonnier entered the room and told defendant that they had to leave. They exited the house and escaped in defendant’s vehicle. After they left, Sonnier told defendant that Sonnier had injured “the Mexican” while he was at Graci’s house.
Evidence, which was seized from the crime scene, was submitted for testing and revealed Mr. Sonnier’s DNA on a lamp and carpet. There was no DNA that matched defendant’s DNA recovered from the scene.
On March 5, 2009, a Jefferson Parish Grand Jury indicted defendant, Joseph Cammatte, and co-defendant, Mark Sonnier, on one count of second degree murder, a violation of La. R.S. 14:30.1. On March 6, 2009, defendant entered a plea of not guilty.
After a two-day trial,[1] a twelve-person jury found defendant guilty as charged on July 14, 2011. On August 10, 2011, the trial judge sentenced defendant to life imprisonment without benefit of parole, probation, or suspension of sentence. This appeal follows.

Law and Argument

On appeal, defendant raises three counseled and five pro se assignments of error: first, it was error to deny the Motion to Suppress; second, the evidence was insufficient to support the verdict of guilty as charged of second degree murder; third, the trial court imposed an excessive sentence; fourth, defendant did not have the requisite mental state to be a principal to the murder of Jose Martinez; fifth, the indictment against defendant was fatally defective because he was charged with use of force and arms but prosecuted as a principal to the murder; sixth, the indictment was fatally defective because Mark Sonnier has already pled guilty to | sthe offense charged in the indictment; seventh, defendant’s conviction is unlawful because no evidence of the “use of force and arms” was presented at trial; and eighth, the State failed its legal burden of proving defendant’s specific intent beyond a reasonable doubt in this case.
When the issues on appeal relate to both the sufficiency of evidence and one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992). If the appellate court determines that the evidence was insufficient, then the defendant is entitled to an acquittal, and no further inquiry as to trial errors is necessary. Id.
Thus, we will address defendant’s second counseled and first and fifth pro se assignments of error at the outset. In each of those three assignments, defendant argues that the evidence presented at trial was not sufficient to support his conviction under the felony murder doctrine.
*982 In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674, p. 9 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-953, p. 4 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885. Under the Jackson standard, a review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing [fiCourt is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. Id.
Here, defendant was convicted of second degree murder. Second degree murder is defined by La. R.S. 14:30.1(A)(2) as the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of one of several enumerated felonies, including aggravated burglary. State v. Lewis, 05-170 (La.App. 5 Cir. 11/29/05), 917 So.2d 583, 589-90, writ denied, 06-0757 (La.12/15/06), 944 So.2d 1277. One need not possess specific intent to kill or inflict great bodily harm to be a principal to second degree felony murder. State v. Gurganus, 03-992 (La.App. 5 Cir. 12/30/03), 864 So.2d 771, 775, writ denied, 04-0254 (La.6/4/04), 876 So.2d 75. Rather, under the felony murder doctrine, the State need only prove the commission of the underlying felony or the attempt thereof. Lewis, 917 So.2d at 590.
In this case, the offense was initially classified as an aggravated burglary. La. R.S. 14:60 defines aggravated burglary as:
[T]he unauthorized entering of any inhabited dwelling, or of any structure, water craft, or movable where a person is present, with the intent to commit a felony or any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; or
(3) Commits a battery upon any person while in such place, or in entering or leaving such place.
In State v. Cedrington, 98-253 (La.App. 5 Cir. 12/16/98), 725 So.2d 565, 576, writ denied, 99-0431 (La.6/25/99), 745 So.2d 1182, this Court found that the evidence was sufficient to prove aggravated burglary as the underlying offense to felony murder. In that case, the defendant, with an armed accomplice, entered the victim’s house without authority and committed a battery upon an occupant of the house. Even though the defendant did not shoot the homicide victim, this Court affirmed the defendant’s second degree murder conviction. Id.
|7Similarly, in the instant case, the evidence reveals that this defendant did not strike Mr. Martinez. Defendant admits, however, that he entered Mr. Graci’s house without his consent and with the intent to commit a felony, i.e. theft or robbery. Further, he admits that, once inside the house, he armed himself with a dangerous weapon and committed an aggravated battery upon Mr. Graci. Upon review, we find that a rational trier of fact could find that the State proved all of the elements of aggravated burglary beyond a *983 reasonable doubt. Since the State proved that Mr. Martinez was killed while the offenders were engaged in the perpetration of a felony, again a rational trier of fact could find the offenders guilty of second degree murder beyond a reasonable doubt. This assignment of error lacks merit.
Returning to defendant’s first assignment of error, he argues that the trial court erred in denying his motion to suppress his recorded statement. He contends that his invocation of his right against self-incrimination was not scrupulously honored by the detectives so his statement should have been suppressed.
Defendant contends that, when the officers from the Jefferson Parish Sheriffs Office first questioned him, he was advised of his rights then “immediately ... said that he didn’t have nothing to say.” Sergeant Bradberry responded, “Okay. You know if you don’t have nothing to say, then we’re going to leave.” When the officers were getting ready to leave, defendant asked, “What did — what did Mark have to say?” When the detectives told him that Mr. Sonnier had given a statement, defendant said, “Well, sit down. I’m going to tell /all what happened. I didn’t go over there to kill anybody. I just went there to rob somebody.”
Defendant maintains that his statement that he had nothing to say was an unequivocal invocation of his right to silence and that his subsequent statement | Rwas given in violation of Miranda.[2] Conversely, the State contends that defendant voluntarily and intelligently waived his right to silence.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove, beyond a reasonable doubt, that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived them, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducements, or promises. State v. Loeb, 09-341 (La.App. 5 Cir. 2/23/10), 34 So.3d 917, 924-25, writ denied, 10-0681 (La.10/15/10), 45 So.3d 1110. Whether a defendant’s purported waiver of Miranda rights was voluntary is determined by the totality of the circumstances. Id. The critical factor in a knowing and intelligent waiver is whether the defendant was able to understand the rights explained to him and voluntarily gave the statement. Id. A trial court’s determination on the admissibility and its conclusion on the credibility and weight of the testimony relating to the voluntariness of the statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id.
The first inquiry is whether defendant was adequately advised of his rights. At the hearing on defendant’s motion to suppress his statement, Sergeant Todd Rivere and Sergeant Troy Bradberry both testified that defendant was read his rights, indicated that he understood them, and executed a waiver form, which was introduced into evidence. Further, the transcript of defendant’s statement, which was also introduced into evidence, reveals that he was advised of, understood, and waived his rights. Furthermore, Sergeant Rivere and Sergeant Bradberry testified that defendant was in no way forced, coerced, or promised anything to give his statement. Additionally, defendant signed his name beneath the statement that “No lapromises or threats have been made to me and no pressure or coercion of any kind has been used against me.” The *984 evidence introduced at trial and at the suppression hearing indicates that defendant was adequately advised of his rights and that he understood them.
The next issue to be determined is whether defendant invoked his right to silence. Miranda, does not require that a defendant exercise his right to remain silent by any particular phrasing. State v. Keller, 09-403 (La.App. 5 Cir. 12/29/09), 30 So.3d 919, 928, writ denied, 10-0267 (La.9/17/10), 45 So.3d 1041. But, if a criminal suspect indicates in any manner prior to or during questioning that he wishes to remain silent, the interrogation must cease. Id.
In State v. Robertson, 97-0177 (La.3/4/98), 712 So.2d 8, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998), the defendant, who was convicted of first degree murder, claimed the trial court erred in admitting his confession because it was the result of police coercion after he had invoked his right to remain silent. The defendant argued that he invoked his Fifth Amendment right to silence when he responded “uh uh” to questioning about whether he wanted to say anything more about what happened. Id. at 29.
The Louisiana Supreme Court found that the defendant’s indication he had nothing further to say about the crimes did not reasonably suggest a desire to end all questioning or to remain silent. Id. at 31. Rather, the court determined that defendant’s negative reply, “uh uh,” could not plausibly be understood as an invocation, ambiguous or otherwise, to cut off police questioning in all respects. Id. Instead, the defendant continued to talk to authorities even after the “uh uh” response was indicated by continuing to respond to questions and to assert his innocence. Id. The Court noted that the defendant never indicated he did not want to speak to the police at all, only that he had nothing to say about the murders. Id. [ 1ftThe fact that the defendant continued to speak to police reflected an intent to continue the exchange. Id.
Here, even if defendant’s statement that he had “nothing to say” could be considered an invocation, defendant clearly revoked any invocation and waived his right against self-incrimination when he stated, “Well, sit down. I’m going to tell y’all what happened. I didn’t go over there to kill anybody. I just went there to rob somebody.” As a result, we find no error in the trial court’s ruling denying defendant’s motion to suppress and finding that defendant’s statement was admissible. This assignment of error also lacks merit.
In his third assignment of error, defendant argues that his life sentence is excessive. He contends that because he was not the person directly responsible for the death of the victim, his sentence should not be so severe. Conversely, the State contends that defendant’s sentence is the mandatory minimum and defendant has not upheld his burden of showing that a downward departure from the mandatory minimum is appropriate in his case.
This Court has held that the failure to file a motion to reconsider sentence, or to state the specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509; State v. Hester, 99-426, p. 10 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342. The record reflects that defen dant did not file a motion to reconsider sentence. Thus, we will review defendant’s sentence for constitutional exces-siveness alone.
*985 | nFirst, we note that defendant’s life sentence is mandatory under La. R.S. 14:30.1(B).[3] It is presumed that a mandatory minimum sentence is constitutional. State v. Royal, 03-439, p. 11 (La.App. 5 Cir. 9/30/03), 857 So.2d 1167, 1174, writ denied, 03-3172 (La.3/19/04), 869 So.2d 849.
Nevertheless, even though defendant received the mandatory minimum sentence, that sentence may still be reviewed for constitutional excessiveness. Id. To rebut the presumption of constitutionality, the defendant must show that: “ ‘[he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense and the circumstances.’ ” Id.
In Royal, the defendant was convicted of second degree murder and received the mandatory minimum sentence of life imprisonment. At his sentencing hearing, the defendant failed to present any evidence or make any argument regarding a downward departure from the mandatory minimum sentence. Id. As a result, this Court found that the defendant failed to carry his burden and concluded that his sentence was not excessive. Id. See also, State v. Hill, 98-1087, p. 9 (La.App. 5 Cir. 8/31/99), 742 So.2d 690, 696-97, writ denied, 99-2848 (La.3/24/00), 758 So.2d 147 (life sentence not excessive for defendant who was not the gunman directly responsible for the victim’s death).
Here, although defendant was not directly responsible for the victim’s death, he admitted to committing aggravated burglary, which led to Jose Martinez’s death, Further, defendant failed to argue for a downward departure from the 112mandatory minimum sentence before he was sentenced. Accordingly, defendant has faded to rebut the presumption of constitutionality by showing that he is “a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender.” He has not borne the burden of proving that his sentence was excessive. This assignment of error, too, lacks merit.
We move now to the first of defendant’s three remaining pro se assignments of error. First, defendant argues that his indictment is fatally defective. The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Favors, 09-413, p. 11 (La.App. 5 Cir. 11/10/09), 28 So.3d 433, 441. The defendant did not file a motion to quash the bill as defective and, thus, has waived any claim based on the allegedly defective indictment. State v. Favors, 09-413 (La.App. 5 Cir. 11/10/09), 28 So.3d 433, 441.
In his third pro se assignment of error, defendant argues that only one defendant can be charged with the same crime in the same indictment. Again, the time for testing the sufficiency of an indictment is before trial by way of a motion to quash. State v. Favors, supra. Any claim regarding this has been waived.
Furthermore, La.C.Cr.P. art. 494 provides:
Two or more defendants may be charged in the same indictment or infor *986 mation if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.
If we were to address the merits of this claim, we would find that defendant’s prosecution on the same charge in the same indictment as his co-defendant was lawful. This assignment of error also lacks merit.
| isln his fourth pro se assignment of error, defendant argues that he was charged by indictment with second degree murder, but was prosecuted for “aiding and abetting” in the murder, which he contends is a different crime.
By definition, “persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.” La. R.S. 14:24. (Emphasis added). Clearly, defendant was prosecuted as a principal to second degree murder for “aiding and abetting” in the felony that led to homicide. Accordingly, we find no merit in defendant’s claim that he was prosecuted for a crime other than the one for which he was indicted. Again, this assignment of error lacks merit.
Finally, pursuant to La.C.Cr.P. art. 920, we have reviewed the entire record for errors patent. Our review reveals that the trial court failed to inform defendant of the relevant time periods within which to appeal his conviction and to apply for post conviction relief as required by La.C.Cr.P. art. 980.8. Accordingly, by this opinion, we advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.C.Cr.P. arts. 914 or 922.

AFFIRMED

. The co-defendants were tried separately. This appeal addresses Joseph Cammatte’s conviction only.

. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518, 520. On the operative date, La. R.S. 14:30.1 provided: "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.”